THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

CHARLES N. SMITH,

    Plaintiff,

v.                                          CIVIL ACTION NO. 3:07-CV-49
                                                   (BAILEY)

WILLIAM J. TEACH, et. al.,

    Defendants.

## ORDER GRANTING MIDDLE DEPARTMENT INSPECTION AGENCY'S MOTION FOR SUMMARY JUDGMENT

This case is presently before the Court on defendant Middle Department Inspection Agency's ("MDIA") Motion for Summary Judgment [Doc. 130], plaintiff's Response [Doc. 147], and defendant MDIA's Reply [Doc. 168]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant MDIA's Motion for Summary Judgment [Doc. 130] should be **GRANTED.**

## BACKGROUND

On May 11, 2009, plaintiff filed an Amended Complaint [Doc. 140] alleging tortious interference in business relationships by MDIA. (Compl. [Doc. 140] ¶¶ 59-66). Specifically, plaintiff alleged the following. Defendant MDIA, through Wesley Clark ("Clark"), falsely reported errors in plaintiff's inspection. (Id. ¶ 63). Defendant MDIA intended that the report would result in adverse action by defendant William J. Teach ("Teach") against the electrical inspection privileges of plaintiff. (Id. ¶ 64). The adverse action taken by Teach

1

would prevent plaintiff from performing inspections, and thereby allow defendant MDIA to inspect jobs which plaintiff was or would be engaged to inspect. (Id.)

On April 30, 2009, defendant MDIA filed a Motion for Summary Judgment [Doc. 130]. In its motion, defendant MDIA argued that plaintiff has failed to present an issue of material fact showing that defendant MDIA improperly interfered with plaintiff's business relationships. ([Doc. 130] at 3). Specifically, defendant MDIA argues that plaintiff has failed to present any evidence that the violations documented by Clark were not present on February 9, 2007.

On June 15, 2009, plaintiff filed a response to defendant's motion for summary judgment [Doc. 147]. In his response, plaintiff argues that Clark, as an experienced electrical inspector, would have seen the 'rough in work' in places such as the basement and realized that the work could have been done after plaintiff's inspection. ([Doc. 147] at 2-3). Plaintiff argues that because Clark performed the inspection without noting the possibility that additional work had been done between February 6, and February 9, and because Clark directed that a copy of his 'review' of plaintiff's work be sent to the State Fire Marshall, there exists an issue of material fact as to defendant's improper interference with plaintiff's business relationships. (Id.) MDIA filed its reply on June 30, 2009 [Doc. 168].

## **FACTS**

The Undisputed Material Facts ("UMF"), taken in the light most favorable to plaintiff, are as follows:

1. Charles Smith inspected lot 14 Peace Pipe Lane on February 6, 2007. (Am. Compl. [Doc. 140] ¶ 19).

2

2. After February 6, 2007, and on or before February 12, 2007 the general contractor on the project, defendants Thomas K. Norton, III and/or Tom Norton Builders, LLC, T/A Clarion Homes contacted the Engineering/Building Permits department to express concerns about the condition of the electrical elements of the project. (Am. Compl. ¶ 20; Suspension Letter [Doc. 140-1]).

3. On February 9, 2007, an inspection of lot 14 Peace Pipe Lane was performed by Clark of MDIA as requested by Tom Norton Builders. (Am. Compl. [Doc. 140] ¶ 19; Clark Report [Doc. 147-1]).

4. Clark was informed that the electrical work was done by M.A.C. electric and that the house had passed final electrical inspection performed by Charles Smith. (Clark Report [Doc. 147-1]).

5. Upon inspection Clark documented 29 violations of the National Electric Code. (Am. Compl. [Doc. 140] ¶ 19; Clark Report [Doc. 147-1]).

6. Charles Smith did not inspect, and did not know to inspect, areas listed as containing violations in Clark's report. (Pl.'s Resp. to M. for Sum. J. [Doc. 147] at 4).

7. Clark instructed Tom Norton of Norton Builders to send a copy of Clark's report to the State Fire Marshal's Office with a written complaint. (Clark Report [Doc. 147-1]).

## DISCUSSION

### I. Standard

The moving party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is

entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). See **Charbonnages de France v. Smith**, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the nonmoving party and to view the facts in the light most favorable to the nonmoving party. **Anderson**, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the nonmoving party's case. **Celotex Corp. v. Catrett**, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. **Anderson**, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *Id.* at 252.

## II. Tortious Interference with Business Relationships

In order to make out a claim for tortious interference with business relationships, plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of improper interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained, and (4) damages. **Hatfield v. Health Management Associates of West Virginia**, 223 W.Va. 259, 672 S.E. 395, 403 (W.Va. 2008); **Torbett v. Wheeling Savings & Trust Co.**, 173 W.Va. 210, 314 S.E. 166 (1983). "Defendants are not liable for interference that is negligent rather than intentional..." **Tiernan v. Charleston Area Medical Center, Inc.**, 203 W.Va. 135, 506

4

S.E.2d 578, 592 (1998). Additionally, "truthful information is an absolute bar to a claim of tortious interference 'whether or not the information is requested'" *Id.* at 593.

Defendant MDIA argues that summary judgment should be granted in its favor as plaintiff cannot show defendant MDIA intentionally interfered with plaintiff's business relationships; and even if plaintiff can make out a claim of intentional interference, plaintiff has not disputed the truth of the information provided in Clark's report. ([Doc. 130] at 3-4). This Court agrees. Even assuming plaintiff has presented a material issue of fact as to interference and damages, plaintiff has presented no evidence from which a jury could find that defendant MDIA improperly interfered with plaintiff's business relationships, nor has plaintiff disputed the accuracy of the report provided by inspector Clark. (See [Doc. 147]).

Plaintiff, in his response, argues that when performing the inspection on February 9, 2007, 'Clark must have known' the violations he documented were not there when plaintiff performed the previous inspection on February 6, 2007; and, thus, in submitting his report without caveats to that effect, MDIA–through Clark–improperly interfered with plaintiff's business relationships. In support of this argument plaintiff submits that a reasonable electrical inspector should have noticed that the work in the basement and other areas was "rough-in" work and concluded that the work might have been done after plaintiff had completed the final electrical inspection three days earlier. ([Doc. 147] at 2). Plaintiff submits nothing to support his contention, excepting an affidavit stating that the work 'could have been done' in the three day period. ([Doc. 146-10] Hoover Depo. at 161:19-165:5). Additionally, plaintiff argues that because Clark had experience with Norton, he should have recognized the 'new rough-in' work was likely done by Norton's son, Nathan, and was not there when plaintiff performed the previous electrical inspection.

([Doc. 147] at 3-4). Plaintiff's evidence is simply unsupported conjecture, which is insufficient to withstand defendant's summary judgment motion. See **Anderson**, 477 U.S. at 252.

Plaintiff has come forward with no evidence that Clark knew what the property looked like on February 6, 2007, or that Clark knew that any work had been done between February 6, 2007 and February, 2007[1]. Without such a showing, any finding that defendant MDIA improperly interfered with plaintiff's business relationships by attributing violations to plaintiff which they knew were a result of new and incomplete work, would be pure conjecture. Likewise, without such information, plaintiff cannot show that Clark reported anything but what he knew to be the truth, and truth is an absolute bar to a tortious interference claim. **Tiernan,** 506 S.E.2d at 593. The Court would also note that defendant was hired by Tom Norton who is the general contractor on the project, as such, it could be expected that Norton would know what work was–and was not new–and could account for that information in reviewing the reinspection report of Clark.

As defendant MDIA points out in its Reply [Doc. 168] it appears as though plaintiff's tortious interference claims are the residue of a conspiracy claim that was voluntarily dismissed. As plaintiff has presented no evidence that would support a jury finding that defendant MDIA improperly interfered with plaintiff's business relationships, defendant MDIA's Motion for Summary Judgment should be **GRANTED**.

It is so **ORDERED**.

---

[1] In accordance with the standard for summary judgment, the Court in viewing the facts in the light most favorable to the plaintiff, assumes for purposes of this motion that new electrical work was done between February 6, 2007 and February 9, 2007.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: July 7, 2009

*[Signature]*
JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE