**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**CHARLES N. SMITH,**

      **Plaintiff,**

**v.**                                **CIVIL ACTION NO. 3:07-CV-49
(BAILEY)**

**WILLIAM J. TEACH, et. al.,**

      **Defendants.**

## ORDER DENYING WILLIAM J. TEACH'S SECOND MOTION FOR SUMMARY JUDGMENT

This case is presently before the Court on defendant William J. Teach's ("Teach") Motion for Summary Judgment [Doc. 132], plaintiff's Response [Doc. 144] , and defendant Berkeley County and defendant William J. Teach's joint Reply [Doc. 149]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant William J. Teach's Motion for Summary Judgment [Doc. 132] should be **DENIED.**

## BACKGROUND

Plaintiff brought suit in the United States District Court for the Northern District of West Virginia under 42 U.S.C. § 1983 and the West Virginia Constitution alleging violations of his Fifth and Fourteenth Amendment right to Due Process; his First Amendment right of Access to the Courts; and negligence. (Compl. [Doc. 1] ¶¶ 17-41). Plaintiff brought suit against the Berkeley County Commission, and against William J. Teach ("Teach") in his individual and official capacity as County Engineer/Building Code Official of Berkeley

County, West Virginia. (Compl. [Doc. 1] at 1; Am. Compl. [Doc. 52] ). On May 11, 2009, plaintiff filed a Second Amended Complaint [Doc. 140] alleging six causes of action: (1) deprivation of property interest in violation of his Due Process right under the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, Section 10 of the West Virginia Constitution; (2) deprivation of liberty interest in violation of his Due Process right under the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, Section 10 of the West Virginia Constitution; (3) deprivation of Substantive Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, Section 10 of the West Virginia Constitution; (4) tortious interference in business relationships; (5) negligence of the defendants in suspending plaintiff's inspection privileges, and (6) injunctive relief against the defendants. (Second Am. Compl. [Doc. 140] ¶¶ 43-79).

On November 13, 2008, this Court granted partial summary judgment in favor of plaintiff on Counts I and II of the Amended Complaint against defendant Teach. [Doc. 99]. On April 30, 2009, defendant Teach filed a Second Motion for Summary Judgment [Doc. 132]. In his motion, defendant Teach asks the Court to: (1) dismiss the official capacity claims against defendant Teach as "since they are redundant to the claims against the Berkeley County Commission"; (2) dismiss the individual capacity claims because defendant Teach is entitled to qualified immunity on the basis that "the constitutional violation was not 'clearly established'" at the time he suspended plaintiff's license; (3) dismiss the negligence claim because it is not cognizable under 42 U.S.C. § 1983 and because defendant is entitled to immunity under state law. ([Doc. 132] at 2).

On June 9, 2009, plaintiff filed its Response to defendant Teach's Second Motion for Summary Judgment. [Doc. 144]. In plaintiff's Response, he argues: (1) that defendant Teach is not entitled to summary judgment on the official capacity claims because partial judgment on those claims (Counts I and II) has already been entered against him, and there is no legal or equitable justification for dismissing the claims; (2) defendant Teach is not entitled to qualified immunity because plaintiff's right to Due Process was clearly established at the time his license was suspended; and (3) defendant Teach is subject to a state negligence claim. On June 27, 2009, defendant Teach filed his Reply [Doc. 149].

## FACTS

The Undisputed Material Facts ("UMF"), taken in the light most favorable to plaintiff, are as follows:

1. Plaintiff is a West Virginia certified electrical inspector doing business as an electrical inspector in Martinsburg and Berkeley County, West Virginia. (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 5; Smith Dep. at 35:6-8; Teach Dep. at 156:2-4).

2. Defendant William J. Teach is the County Engineer/Building Code Official for Berkeley County, West Virginia. (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 6; Pl.'s M. for Summ. J. at 2 ¶ 2; Teach Dep. at 14:15-18, 17:19-18:7).

3. Defendant William J. Teach is the head of the Berkeley County Engineering/Building Permits Department. (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 6; Teach Dep. at 14:15-18, 17:19-18:7; Pl.'s M. for Summ. J. [Doc. 66-1] at 2).

4. Defendant County Commission of Berkeley County is a political subdivision of the State of West Virginia and is the employer of defendant Teach. (Berkeley County's

Answer to Second Am. Compl. [Doc. 142] ¶ 7; Pl.'s M. for Summ. J. [Doc. 66-1] ¶ 3).

5.     Plaintiff was certified in 2003, by the State Fire Marshal, pursuant to W. Va. Code § 29-3C-1 *et seq.*, to perform electrical inspections in West Virginia.  (Berkeley County's  Answer to Second Am. Compl. [Doc. 142] ¶ 11; Smith Dep. at 35:6-8; Teach Dep. 155:7-156:4).

6.     Plaintiff was a certified electrical inspector in the State of West Virginia at all times relevant to the case at bar.  (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 11; Smith Dep. at 35:6-8; Teach Dep. 155:7-156:4).

7.     As a certified electrical inspector in West Virginia, plaintiff was performing electrical inspections in Berkeley County, West Virginia, from 2003 through February 22, 2007.[1]  (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 13-14; Pl.'s M. for Summ. J. [Doc. 66-1] at 3).

8.     Defendant Teach suspended plaintiff's electrical inspector's license in Berkeley County, West Virginia on February 22, 2007.  (Berkeley County's Answer to Second

---

[1] Defendant Teach submitted two electrical inspections agreements, one dated February 14, 2003, and one dated January 28, 2005.  (Teach's Resp. and Cross M., attachments).  Defendant Teach also noted in his Response portions of plaintiff's deposition relating to plaintiff's understanding of the agreements.  (Id. at ¶8).  It is clear to the Court, however, that on their face the agreements were not in effect during the time at issue. The February 14, 2003 agreement terminated on June 30, 2004, and the January 28, 2005 agreement terminated on December 31, 2005.   (Teach's Resp. and Cross M., attachments).  The attachments were not in effect and, therefore, are irrelevant to the instant motion.

Am. Compl. [Doc. 142] ¶ 14; Pl.'s M. for Summ. J. [Doc. 66-1] at 3, [Doc. 66-2] Ex.1, Suspension Letter, dated February 21, 2007 ).

9.   On February 6, 2007, plaintiff performed a final electrical inspection at a residential construction project permitted by the Berkeley County Engineering/Building Permits Department under permit #36444G (hereinafter "project"). (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶¶ 19, 21-22; Pl.'s M. for Summ. J. [Doc. 66-1] at 3; Suspension Letter; www.berkeleycountycomm.org at building permit #36444G, picture DSCN 1018 [2]).

10.  After February 6, 2007, and on or before February 12, 2007 the general contractor on the project, defendants Thomas K. Norton, III and/or Tom Norton Builders, LLC, T/A Clarion Homes (hereinafter "Norton") contacted the Engineering/Building Permits department to express concerns about the condition of the electrical elements of the project. (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 20; Pl.'s M. for Summ. J. [Doc. 66-1] at 3; Suspension Letter; www.berkeleycountycomm.org).

11.  After February 6, 2007, and on or before February 12, 2007 Norton requested, and was granted, permission to reinspect the electrical elements of the project. (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 20; Teach Dep.

---

[2] Defendant Berkeley County admitted in its Answer to the Second Amended Complaint that the contents of the website www.berkeleycountycomm.org are accurate with respect to building permit #36444G.  (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 21-22).   The Court, therefore, will take the contents of the website www.berkeleycountycomm.org with respect to building permit #36444G to be evidence in its own right and refer to it hereinafter as "www.berkeleycountycomm.org."

37:16-38:5; Pl.'s M. for Summ. J. [Doc. 66-1] at 3; Suspension Letter; www.berkeleycountycomm.org).

12.    Defendant Teach considered Norton's concerns about the condition of the electrical elements to constitute the complaint against plaintiff. (Teach Dep. at 37:16-38:5; Pl.'s M. for Summ. J. [Doc. 66-1] at 3; Suspension Letter, www.berkeleycountycomm.org).

13.    Defendant Teach, through his staff, inspected the property on February 12, 2007. (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 23; Teach Dep. at 38:6-15; Pl.'s M. for Summ. J. [Doc. 66-1] at 3; Suspension Letter, www.berkeleycountycomm.org).

14.    Plaintiff was not given notice of the reinspection. (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶ 23; Pl.'s M. for Summ. J. [Doc. 66-1] at 3).

15.    On or about February 12, 2007, Norton submitted to the Engineering/Building Permits Department the written report of the reinspection, listing twenty-nine (29) alleged electrical code violations. (Teach Dep. at 38:16-39:8; Pl.'s M. for Summ. J. [Doc. 66-1] at 3; Suspension Letter, www.berkeleycountycomm.org).

16.    On or about February 12, 2007, a member or members of the Engineering/Building Permits Department staff accompanied Defendant Norton and/or Wesley Clark to the project site and photographed the alleged electrical code violations. (Teach Dep. at 38:16-40:8, 201:9-15; Pl.'s M. for Summ. J. [Doc. 66-1] at 4; Suspension Letter, www.berkeleycountycomm.org).

17.    On February 21, 2007, defendant Teach wrote and sent a certified letter to plaintiff notifying him that his inspection privileges in Berkeley County had been suspended

for 60 days. (Berkeley County's Answer to Second Am. Compl. [Doc. 142] ¶¶ 14, 19; Teach Depo. 203:3-5; Pl.'s M. for Summ. J. [Doc. 66-1] at 4; Suspension Letter).

18.    Plaintiff received the Suspension Letter on or about February 23, 2007. (Smith Dep. at 292:2-293:14-21).

19.    Prior to the Suspension Letter, plaintiff had been given no notice of the complaint against him, of any proposed suspension of his inspection privileges in Berkeley County, or of the suspension. (Teach Dep. at 77:20-78:6; Pl.'s M. for Summ. J. [Doc. 66-1] at 5).

20.    Plaintiff was not given the opportunity by defendant Teach to contest his suspension within 72 hours of receipt of the Suspension Letter. (Teach Dep. at 99:9-100:9; Pl.'s M. for Summ. J. [Doc. 66-1] at 5)

21.    At all times relevant to the case at bar defendant Teach was acting under color of state law. (Berkeley County's Answer to Second Am. Compl. ¶ ¶46, 51 [Doc. 142]; Pl.'s M. for Summ. J. [Doc. 66-1] at 5).

## DISCUSSION

### I.    Standard

The moving party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See **Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the nonmoving party and to view the facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson*, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *Id.* at 252.

## II.    Official and Individual Capacity Claims

On November 13, 2008, this Court granted summary judgment in favor of plaintiff on Counts I and II. [Doc. 99]. Plaintiff brought suit against defendant Teach in both his personal and official capacities. In defendant Teach's Second Motion for Summary Judgment, he argues defendant Teach is entitled to summary judgment on the official capacity claims because the liability for those claims would run to Berkeley County; and therefore, the claims are "redundant" of the claims against the County Commission. [Doc. 132]. The Court recognizes that plaintiff would only be able to recover once for both the "official capacity" claims and the claims against the County. That fact does not, however, require the dismissal of either Count at this juncture. In fact, plaintiff could prevail on both claims, and his recovery would simply be limited. As both parties discuss at length the distinctions between the "official capacity" and "individual capacity" claims, the Court will begin its analysis there.

The Supreme Court in **Kentucky v. Graham,** 473 U.S. 159, 165 (1985), laid out in detail the purposes of, and differences between individual and official capacity suits. The Court stated as follows:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. *See, e.g., **Scheuer v. Rhodes***, 416 U.S. 232, 237-238 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." ***Monell v. New York City Dept. of Social Services***, 436 U.S. 658, 690, n. 55 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. ***Brandon***, *supra*, 469 U.S. at 471-472. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

Here, plaintiff has asserted claims against defendant Teach in his personal and official capacities, as well as against the Berkeley County Commission (thus the "government entity [recieved] notice and an opportunity to respond" to plaintiff's official capacity claims). The liability for plaintiff's claims breaks down as follows:

- Personal capacity claim against Teach: Against Teach personally, his assets

- Official capacity claim against Teach: Against County, County's assets

- Claim against Berkeley County Commission: Against County, County's assets

If plaintiff succeeds on his official capacity claim, then the liability for any damage award would run to the County.  Defendant is correct that because the County is liable whether plaintiff succeeds against the County itself, or against defendant Teach in his official capacity, both claims are not *required*.[3]  Defendant is incorrect, however, in claiming that this Court–or defendant Teach–should be allowed to choose on which claim plaintiff proceeds.

---

[3]    As noted by the Court in **Kentucky v. Graham**, 473 U.S. 159, 167 n.14 (1985):

> There is no longer a need to bring official-capacity actions against local government officials, for under **Monell,** *supra*, local government units can be sued directly for damages and injunctive or declaratory relief. *See, e.g.,* **Memphis Police Dept. v. Garner**, 471 U.S. 1 (1985) (decided with **Tennessee v. Garner** ) (damages action against municipality).  Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own name regardless of the relief sought. **Alabama v. Pugh**, 438 U.S. 781 (1978) (per curiam).  Thus, implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State. *See* **Ex parte Young**, 209 U.S. 123 (1908).
>
> In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. "The course of proceedings" in such cases typically will indicate the nature of the liability sought to be imposed. **Brandon v. Holt**, 469 U.S. 464, 469 (1985)."

The standard for establishing liability under § 1983 is different depending on whether plaintiff is moving against the assets of the individual or the assets of the government entity (individual capacity or official capacity/claim against the entity).

> On the merits, to establish *personal* liability in a §1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *See, e.g., Monroe v. Pape*, 365 U.S. 167 (1961).

*Graham*, 473 U.S. at 166 (emphasis in original). This Court previously found that defendant Teach, acting under color of state law, deprived plaintiff of his state-issued electrical inspector's license without due process of law. (See [Doc. 99]). As such, the standard for individual capacity liability under § 1983 was met, and this Court granted summary judgment in favor of plaintiff on that claim.[4]

> More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation, *Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (quoting [*Monell v. Dept. of Social Services of City of N.Y.*, 436 U.S. 685, 694 (1978)]); thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Monell*, [436 U.S. at 694]; *Oklahoma City v. Tuttle*, 471 U.S. 808, 817-818 (1985); *Id.* at 827-828 (Justice Brennan, concurring in judgment). FN12[5]

---

[4]   Defendant now asserts a qualified immunity defense with regard to the individual capacity claim; it will be addressed in section III, *infra*.

[5]   FN12. *See Monell*, 436 U.S. at 694 ("[A] local government may not be sued

*Graham*, 473 U.S. at 167.  In this Court's summary judgment order of November 13, 2008, [Doc. 99] this Court also granted summary judgment against defendant Teach, on the official capacity claims with regard to Counts I and II.  After reviewing the arguments of the parties, it is clear, however, that the Court was sparse in setting out is reasoning for granting summary judgment on the official capacity claims.  As such, the Court will clarify its findings.

As stated above, "[m]ore is required in an official-capacity action...a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation."  Throughout the briefing (both on the prior summary judgment motion, as well as the current summary judgment motion) defendant Teach has argued that the "contract" between plaintiff and Berkeley County allowed for suspension of plaintiff's electrical inspection privileges in Berkeley County; and that, therefore, defendant Teach's action was proper.  The Court has rejected the applicability of the "contract" to defendant Teach's suspension of plaintiff's license in February of 2007, because the contract was not in effect at the time plaintiff's license was suspended. ([Doc. 99] at 6 n.2).  The "contract" is, however, relevant to show the "policy or custom" of Berkeley County.  *See Monell*, 436 U.S. at 694.

A municipal actor is liable in his official capacity where: (1) he took action which deprived an individual of a constitutional right; and (2) when that action was taken in

_____

under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

accordance with "the entity's 'policy or custom.'" *See Monell*, 436 U.S. at 694; *Oklahoma City v. Tuttle*, 471 U.S. 808, 817-818 (1985). Here, the Court already established that defendant Teach took action which deprived plaintiff of his state-issued electrical inspections license in violation of plaintiff's right to procedural Due Process. The next step is to determine if that action was taken in accordance with Berkeley County's "policy or custom."

The "contract" provided to the Court by defendant ([Doc. 67-10 at 51-55) establishes that the action taken by defendant Teach was taken in accordance with Berkeley County's "policy or custom." *Monell*, 436 U.S. at 694. "Municipal policy may be expressed in legislative acts, like an ordinance or regulation; in a single action taken by a municipal official with 'final policymaking authority' in the relevant area; or even by the actions of a subordinate official that a higher official ratifies." *U.S. Cold Storage, Inc. v. City of Lumberton*, 2002 WL 832200 *1, *3 (4th Cir. May 2, 2002) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

Here, the Court is presented with the admission of defendant Teach–the County Engineer/Building Code Official for Berkeley County–that there is a contract with respect to all electrical inspectors, and that the contract on its face provides for suspension of electrical inspection privileges for a period of 60 days. The contract was not in effect during the period in question in the case at bar. ([Doc. 99] at 6 n.2; [Doc. 67-1] at 51-55). This Court finds, however, that defendant's repeated assertion that the contract should form the basis of this Court's decision as to whether defendant Teach had the authority to suspend plaintiff's license, is sufficient to find that the contract constitutes a policy by Berkeley

13

County to suspend licenses of electrical inspectors without Due Process[6]. Defendant Teach is, therefore, as this Court previously held, also liable in his official capacity as a matter of law.

## III. Defendant Teach's Qualified Immunity Defense with Regard to Personal Capacity Claims

Despite the fact that the above-styled case has been pending for over two years, and all the facts relevant to defendant Teach's qualified immunity defense have been available to him for the case's full pendency, defendant now–after discovery and one motion for summary judgment–asserts a qualified immunity defense[7]. "When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such as objectively reasonable reliance on existing law. *See Imbler v. Pachtman*, 424 U.S. 409 (1976) (absolute immunity); *Pierson v. Ray*, 386 U.S. 547 (1967) (same); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) (qualified immunity); *Wood v. Strickland*, 420 U.S. 308 (1975) (same)." *Graham*, 473 U.S. at 167. Here, defendant Teach claims he is entitled to summary judgment because the

---

[6] The Court notes that this finding may appear inconsistent with the Court's finding below that defendant Teach could have objectively reasonably relied on the contract as a basis for his belief that when an individual's license was suspended pursuant to the contract that individual could seek review before the Building Code Board of Appeals (see II, *infra*). The analysis for Due Process required with respect to plaintiff's electrical inspections license is different, however, from the "reasonableness" inquiry required by an inquiry into whether defendant Teach is entitled to qualified immunity.

[7] With some irony, defendant notes "[a] ruling on the immunity issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." ([Doc. 132] at 8).

constitutional violation at issue was not clearly established when defendant Teach suspended plaintiff's license. This Court disagrees.

An official is entitled to qualified immunity unless: "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a 'clearly established' right 'of which a reasonable person would have known." *Ridpath v. Board of Governors Marshall University*, 447 F.3d 292, 306 (4th Cir. 2006). As discussed in this Court's previous summary judgment order [Doc. 99], defendant Teach suspended plaintiff's state-issued electrical inspections license–which could only be revoked for cause by the State Fire Marshal–without Due Process. (See generally [Doc. 99]). Defendant contends that his belief that he could suspend plaintiff's license was reasonable "given that the West Virginia Code of State Rules authorized 'enforcement' of the building code." ([Doc. 132] at 9).

The Court has previously addresses in *detail* all sections of the code to which defendant cites in support of his argument that his suspension of plaintiff's license was reasonable. (See [Doc. 99] ). Despite this Court's previous rejection of those arguments, and rejection of defendant's persistent attempts to frame the suspension of plaintiff's license as a simple refusal "to accept inspections performed by Plaintiff for sixty days," ([Doc. 132] at 11), defendant continues to argue his reliance on that construction was reasonable, and adds a new twist. Defendant argues that because it was not "clearly established" that defendant did not have the authority to suspend plaintiff's license at the time defendant Teach took action, he could not have known that he did not have the authority to suspend plaintiff's license and, therefore, his belief that the Building Code

Board of Appeals provided plaintiff with sufficient Due Process was objectively reasonable (and provides him with qualified immunity).

Defendant is framing the issue incorrectly: the inquiry is *not* whether defendant Teach properly engaged in statutory construction, but whether the law was clearly established that a person could not be deprived of a state-issued license or certification, revocable only for cause, without due process of law. *See* **Hope v. Pelzer**, 536 U.S. 730, 741 (2002) (noting, "general statements of law are not inherently incapable of giving fair and clear warning," in some circumstances, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question"). Defendant is not, therefore, unentitled to qualified immunity because he mistook his authority to suspend plaintiff's license, but because he suspended plaintiff's license without any notice or opportunity for a hearing (including before the Building Code Board of Appeals). *See* **Cleveland Bd. of Educ. v. Loudermill**, 470 U.S. 532, 542 (1985).

Defendant argues that he "believed the [contract] provided for an avenue for appeal." ([Doc. 132] at 12). The Court previously found that the contract under which defendant argues plaintiff was operating was not in effect on February 12, 2007. ([Doc. 99] at 6 n.2). Defendant's understanding, however, that the contract was in effect, and that it provided an avenue for plaintiff to appeal his suspension, *could* form the basis of an "objectively reasonable belief" that plaintiff would be afforded Due Process. See **Ridpath**, 447 F.3d at 306. After review of the record and the arguments of the parties, the Court finds defendant did not reasonably rely on plaintiff's access to the Building Code Board of Appeals because defendant did not give plaintiff meaningful access to the board if it existed at all. *See* **Goldberg v. Kelly**, 397 U.S. 294, 267 (1970)(noting that a hearing required by

16

Due Process must be "at a meaningful time and in a meaningful manner," quoting

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); (see Teach Depo. [Doc. 144-8] at 101-

104; Smith Depo. 102-103; Kable Aff. [Doc. 71-3]; May Aff. [Doc. 71-2] ).

The crux of defendant's argument is the existence of and accessability of the

"Building Code Board of Appeals." This Court found in its previous summary judgment

order [Doc. 99] that the Building Code Board of Appeals was irrelevant to the inquiry of

whether plaintiff had been denied Due Process (finding that because his license could only

be suspended by the State Fire Marshal, and the Building Code Board of Appeals[8] could

only review decisions which defendant Teach had the authority to make, any possible

appeal could not have afforded plaintiff Due Process). The Building Code Board of

Appeals, if actually available to plaintiff, could, however, entitle defendant Teach to qualified

immunity due to his objectively reasonable reliance that the Board would provide plaintiff

with the required due process. The problem with defendant's argument, however, is it is

clear that the information required to as to *how to appeal to the board,* or *how to contact*

*the board*, or *how to file an objection to the suspension*, was never provided to plaintiff; and

defendant Teach–although aware of defendant's desire to appeal the decision–did nothing

to ensure that the information was available to plaintiff (or any other individual). (Teach

_____

[8]        In its decision the Court also noted: Defendant cited to IBC § 112 which was

repealed by the State Building Code (C.S.R. § 87-4-4.1.1B), but as the State Building Code

provides for 'qualifications' for a Board of Appeals but does not replace the two sections

of the IBC which would make any such qualification relevant, the Court construes C.S.R.

§ 87-4-4.1.1B as only repealing and replacing the qualifications section of IBC §

112–leaving the board of appeals section of the IBC intact and thereby incorporated into

the State Building Code.

Depo. [Doc. 144-8] at 101-104; Smith Depo. 102-103; Kable Aff. [Doc. 71-3]; May Aff. [Doc. 71-2] ).  An appeal in name only is no appeal at all.  Thus, this Court cannot find that defendant reasonably relied on plaintiff's ability to appeal to the Building Code Board of Appeals to satisfy Due Process.  Accordingly, defendant's Motion for Summary Judgment on the basis of qualified immunity should be **DENIED**.

## IV.    Plaintiff's Negligence Claims

Defendant also argues that he is entitled to summary judgment on plaintiff's negligence claims because the claims are not cognizable under § 1983, and as defendant is entitled to immunity. ([Doc. 132] at 13-14).  The Court would note that plaintiff's negligence claim is before the Court under pendant jurisdiction, not under § 1983.  As such, the Court will only address defendant's immunity arguments.

Defendant argues first, that West Virginia Code §29-12A-13(b) prohibits plaintiffs from naming in a negligence action, "an employee of a political subdivision acting within the scope of his employment;" and second, that West Virginia Code §29-12A-5(b) immunizes defendant from liability unless one of the following applies:

> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in wanton or reckless manner; or
> (3) Liability is expressly imposed upon the employee by a provision of this code.

In response, plaintiff argues that although the County may be the proper named party, as there are material facts still in dispute, naming defendant Teach in the claim is proper.  ([Doc. 145] at 7) (citing **Brooks v. City of Weirton**, 202 W.Va. 246, 503 S.E. 2d

18

814 (1998)).  In **Brooks**, the West Virginia Supreme Court addressed the issue of whether naming a city employee acting in the scope of their employment could be proper despite the prohibition in  §29-12A-13(b).  The Court held:

> that W.Va.Code, 29-12A-13(b) [1986] prohibits the naming of an employee of a political subdivision acting within the scope of employment as a defendant for the purpose of directly establishing the liability of a political subdivision. However, W.Va.Code, 29-12A-13(b) [1986] does not prohibit the naming of an employee of a political subdivision acting within the scope of employment as a defendant for purposes of establishing the employee's liability, when one or more of the statutory exceptions in W.Va.Code, 29-12A-5(b) [1986] to employee immunity is present.

**Brooks,** 202 W.Va. at 258.  Additionally, the Court held that the "wanton and reckless" exception of §29-12A-5(b)(2) did not *per se* place the employee's conduct outside the scope of his employment.  Thus, an employee who engaged in "wanton and reckless" conduct could do so in the scope of his employment, and the governmental entity would remain liable under §29-12A-4(c)(2).  *See also* **Brooks v. Isengood**, 213 W.Va. 675, 681, 584 S.E.2d 531, 537 (2003) (stating, "we held [in **Brooks v. City of Weirton**, 202 W.Va. 246, 503 S.E. 2d 814 (1998)] that if a political subdivision was immune under the provisions of the Act, then the political subdivision could not be directly named as a defendant under the Act.  Instead, the Court indicated that if an employee's conduct was actionable under the Act, and even if the political subdivision was financially responsible for the employee's conduct, then any lawsuits regarding the employee must proceed in the employee's name.")

19

Here, plaintiff named both the Commission and defendant Teach in his negligence claim. Suit against the Commission is proper so long as the Commission is not immune pursuant to §29-12A-5(a). Suit against defendant Teach is proper so long as his actions were in the scope of his employment. See §29-12A-5(b)(1). Defendant argues that plaintiff has failed to allege that defendant Teach's actions were "not within the scope of his employment," and, therefore, defendant Teach is immune pursuant to §29-12A-5(b). Defendant fails, however, to note that plaintiff's allegation that defendant Teach was acting in the scope of his employment has not been admitted by defendant. (See [Docs. 50, 60 ¶¶ 16, 17). As such, a material issue of fact remains as to whether defendant Teach was, or was not, acting within the scope of his employment and, therefore, summary judgment on the negligence claim should be **DENIED**[9].

## CONCLUSION

Based on the foregoing reasoning, the Court finds that defendant Teach's Second Motion for Summary Judgment [Doc. 132] should be **DENIED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

---

[9]     Additionally, plaintiff notes that in the complaint plaintiff has alleged that defendant Teach acted with "malicious purpose, in bad faith, or in a wanton or reckless manner" which would fall under §29-12A-5(b)(2). (See [Doc. 140] ¶¶ 69-70). In response defendant simply states "[n]o evidence has been brought forward that would permit a jury or this Court to find that on February 12, 2007, Mr. Teach acted intentionally or wrongfully as to Mr. Smith." ([Doc. 149] at 7). As the Court has found one basis on which plaintiff's negligence claim should proceed to the jury, the Court need not address this other basis.

**DATED**: July 28, 2009


JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE