# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## MARTINSBURG

**CHARLES N. SMITH,**

    **Plaintiff,**

**v.**                                            **CIVIL ACTION NO. 3:07-CV-49**
                                                       **(BAILEY)**

**WILLIAM J. TEACH, et. al.,**

    **Defendants.**

## ORDER DENYING THOMAS K. NORTON, III, AND TOM NORTON BUILDERS, LLC T/A CLARION HOMES' MOTION FOR SUMMARY JUDGMENT

This case is presently before the Court on defendant Thomas K. Norton, III, and Tom Norton Builders, LLC T/A Clarion Homes' ("Norton") Motion for Summary Judgment [Doc. 131], plaintiff's Response [Doc. 146], and defendant Norton's Reply [Doc. 167]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendant Norton's Motion for Summary Judgment [Doc. 131] should be **DENIED.**

## BACKGROUND

On May 11, 2009, plaintiff filed an Amended Complaint [Doc. 140] alleging tortious interference in business relationships by Thomas K. Norton, III, and Tom Norton Builders, LLC T/A Clarion Homes' ("Norton"). (Compl. [Doc. 140] ¶¶ 59-66). Specifically, plaintiff alleged the following. Defendant Norton, through Wesley Clark ("Clark"), falsely reported errors in plaintiff's inspection. (Id. ¶ 63). Defendant Norton intended that the report would result in adverse action by defendant William J. Teach ("Teach") against the electrical

1

inspection privileges of plaintiff. (Id. ¶ 64). The adverse action taken by Teach would prevent plaintiff from performing inspections for which he had been engaged and from accepting additional engagements for such work. (Id.)

On April 30, 2009, defendant Norton filed a Motion for Summary Judgment [Doc. 131]. In its motion, defendant Norton argued that plaintiff has failed to present an issue of material fact showing that defendant Norton improperly interfered with plaintiff's business relationships. [Doc. 131]. Specifically, defendant Norton argues that plaintiff has failed to present any evidence that the violations documented by Clark were not present on February 9, 2007.

On June 15, 2009, plaintiff filed a response to defendant's motion for summary judgment [Doc. 146]. In his response, plaintiff argues that defendant Norton had additional wiring done on the property between the date of plaintiff's final electrical inspection of the property, and the reinspection done by Clark. Plaintiff further argues that because defendant Norton knew the wiring was in a different state than that encountered by plaintiff on his final inspection, any report of Clark would constitute a false report of the errors present at the time of plaintiff's inspection. [Doc. 146]. Plaintiff argues that because he has presented more than a scintilla of evidence to support his claims, there is a material issue of fact as to defendant's interference with plaintiff's business relationships and, therefore, defendant's motion for summary judgment should be denied.

## **FACTS**

The Undisputed Material Facts ("UMF"), taken in the light most favorable to plaintiff, are as follows:

1. Charles Smith inspected lot 14 Peace Pipe Lane on February 6, 2007. (Am. Compl. [Doc. 140] ¶ 19).

2. After February 6, 2007, and on or before February 12, 2007 the general contractor on the project, defendants Thomas K. Norton, III and/or Tom Norton Builders, LLC, T/A Clarion Homes contacted the Engineering/Building Permits department to express concerns about the condition of the electrical elements of the project. (Am. Compl. ¶ 20; Suspension Letter [Doc. 140-1]).

3. On February 9, 2007, an inspection of lot 14 Peace Pipe Lane was performed by Clark of MDIA as requested by Tom Norton Builders. (Am. Compl. [Doc. 140] ¶ 19; Clark Report [Doc. 147-1]).

4. Clark was informed that the electrical work was done by M.A.C. electric and that the house had passed final electrical inspection performed by Charles Smith. (Clark Report [Doc. 147-1]).

5. Upon inspection Clark documented 29 violations of the National Electric Code. (Am. Compl. [Doc. 140] ¶ 19; Clark Report [Doc. 147-1]).

6. Charles Smith did not inspect, and did not know to inspect, areas listed as containing violations in Clark's report. (Pl.'s Resp. to M. for Sum. J. [Doc. 146] at 10).

## **DISCUSSION**

**I.     Standard**

The moving party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See* ***Charbonnages de France v. Smith***, 597 F.2d 406, 414 (4th Cir. 1979). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the nonmoving party and to view the facts in the light most favorable to the nonmoving party. ***Anderson***, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the nonmoving party's case. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. ***Anderson***, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. *Id.* at 252.

**II.  Tortious Interference with Business Relationships**

In order to make out a claim for tortious interference with business relationships, plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of improper interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages. ***Hatfield v. Health Management Associates of West Virginia***, 223 W.Va. 259, 672 S.E. 395, 403 (2008); ***Torbett v. Wheeling Savings & Trust Co.***, 173 W.Va. 210, 314 S.E. 166 (1983). "Defendants are not liable for interference that is negligent rather than

4

intentional..." *Tiernan v. Charleston Area Medical Center, Inc.*, 203 W.Va. 135, 506 S.E.2d 578, 592 (1998). Additionally, "truthful information is an absolute bar to a claim of tortious interference 'whether or not the information is requested'" *Id.* at 593.

Defendant Norton argues that summary judgment should be granted in its favor as plaintiff cannot show defendant Norton intentionally interfered with plaintiff's business relationships; and even if plaintiff can make out a claim of intentional interference, plaintiff has not disputed the truth of the information provided in Clark's report. (See generally [Doc. 131]). The problem with this argument is that plaintiff has raised a material issue of fact as to whether Norton knew at the time Clark performed the second inspection that the state of the electrical wiring in the house had changed. If defendant Norton knew that additional wiring had been done, and failed to instruct Clark on what new wiring had occurred between the time of Smith's initial inspection and Clark's reinspection, then defendant Norton could be liable on the basis of intentional interference with business relationships. *See Torbett*, 173 W.Va. 210; Restatement (Second) of Torts §766A (stating, "[i]nterference is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.")

Specifically, plaintiff argues that defendant Norton had additional 'rough-in' wiring done by someone (presumably defendant Norton's son who is unlicensed in the State of West Virginia) after plaintiff performed the final inspection. ([Doc. 146] at 8-10). This argument is not based on mere allegations of plaintiff, but on the deposition testimony of plaintiff and John C. Hoover, and the affidavit of Paul Montoro. (See citations [Doc. 146] at 8-10). Presented with this testimony (and various documents including emails and letters supporting plaintiff's theory of the case), the Court finds that the above-styled case

is not ripe for summary judgment because: there is a factual dispute as to the state of the wiring at the time plaintiff performed the inspection, and as to defendant Norton's knowledge of the state of the wiring at the time of the initial and the secondary inspection; and, therefore, there is a material issue of fact as to whether the report initiated by defendant Norton (in requesting a reinspection with the knowledge that a copy of the new report be sent to defendant Teach and the State Fire Marshal ([Doc. 131] at 4)) was false.

If defendant Norton requested a reinspection with knowledge that the reinspection would misrepresent the state of the wiring at the time plaintiff performed his final inspection, such action could constitute "an intentional act of improper interference by a party outside that relationship or expectancy." *Hatfield*, 672 S.E. 395, 403. Defendant takes issue with the characterization of the call to the Berkeley County Engineering/Building Permit Office as an intentional act. Defendant argues that the call was simply to request that a reinspection be performed and that there is no evidence that defendant intended the call to interfere with plaintiff's electrical inspections license–especially as defendant Teach had no authority to suspend plaintiff's license. Defendant misconstrues the intentional act.

Defendant could be found liable for intentional interference with business relationships because defendant intentionally misrepresented to Clark and/or defendant Teach and/or the State Fire Marshal (through the report of Clark) the state of the wiring at the time plaintiff performed the final inspection on February 6, 2007. Withholding knowledge that the state of wiring changed between the time that plaintiff performed his inspection and the time Clark performed his inspection would be an intentional act.

Defendant also argues that because defendant Teach was without authority to suspend plaintiff's license, defendant Norton could not have known that the Clark report

6

would result in the suspension of plaintiff's license. As defendant notes in its brief, however, a copy of Clark's report is required by statute to be sent to the State Fire Marshal who did have the authority to suspend plaintiff's license. Additionally, the suspension of plaintiff's license was a direct result of the Clark report. If that report was a false report because defendant Norton intentionally withheld information from Clark, then defendant Norton's intentional act would be a proximate cause of plaintiff's suspension[1].

The fact that defendant Norton knew that adverse action was "substantially certain to occur as a result of his action" (action by the State Fire Marshal), and that such adverse action occurred, although from an unanticipated source (defendant Teach), would be sufficient to sustain a claim for intentional interference with business relationships. As such defendant Norton's Motion for Summary Judgment should be **DENIED**.

## **CONCLUSION**

Based on the foregoing reasoning, defendant Norton's Motion for Summary Judgment [Doc. 131] is hereby **DENIED**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

---

[1] Defendant also argues that plaintiff has provided insufficient evidence to support his claim that he lost work as a result of the interference of defendant Norton. If defendant Norton's withholding of information caused the false report, which led to plaintiff's suspension, then it can be inferred by a jury that such action led to a loss of business (as plaintiff was prohibited from performing inspections in Berkeley County for a period of 60 days).

7

**DATED**: July 28, 2009

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE